CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 0 8 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MARK LADD, | Civil Action No. 5:04-cv-00013 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| JO ANNE BARNHART,<br>Commissioner of Social Security, | By: Samuel G. Wilson<br>United States District Judge |
| Defendant. | |

Plaintiff Mark Ladd brings this action challenging the final decision of the Commissioner of Social Security denying Ladd's 2002 claim for Supplemental Security Income (SSI) payments under the Social Security Act. An Administrative Law Judge (ALJ) found that Ladd is not capable of performing a full range of light work but that he is capable of performing "a significant number of jobs in the national economy." The Commissioner of Social Security adopted that opinion as her final decision. See 42 U.S.C. § 405 (g). The United States Magistrate Judge has filed a report pursuant to 28 U.S.C. § 636(b)(1)(B), recommending that the court reverse the decision and remand the case solely for the calculation of benefits. The Commissioner contends that substantial evidence supports her determination that Ladd is not disabled and has objected to the Magistrate Judge's report. The court agrees with the Commissioner and affirms her decision.

I.

Ladd is thirty-nine years of age and has a ninth grade education. He has worked as a sheet metal worker, production worker, lawn care worker, and painter. In February 2002, Ladd visited Dr. Kathleen Bell, complaining of back pain. After ordering an MRI and other back tests,

Bell diagnosed Ladd with "low back strain with radiculary symptoms, disc protrusion at L4-5 and L5-S1, disc protrusion with annular tear and nerve root irritation" and stated that Ladd was totally disabled from February 11-13, 2002.

Bell referred Ladd to a neurosurgeon Dr. Mark E. Shaffrey for a consultive examination and to a physical therapist for follow-up treatment. Dr. Shaffrey noted that he had reviewed Ladd's MRI and concluded that Ladd had "some small disc protrusions at L4-5 and L5-S1 but without definitive evidence of nerve root impingement." (TR 170). Lacking sufficient objective evidence of nerve root impingement Dr. Shaffrey noted further that he "would like to proceed with a lumbar CT/ myelogram to evaluate Mr. Ladd's radiculoneuropathy." (TR 171). Ladd failed to schedule the necessary follow-up testing, and he stopped seeing the physical therapist after only one appointment.

Around the same time, Ladd also saw Dr. R. David Lee, who diagnosed Ladd with chronic lower back pain, stated that he considered Ladd totally disabled from February 7, 2002, to the present, recommended that Ladd only work half days, and stated that Ladd should do no lifting, bending, stooping, or climbing and that he should only sit, stand, walk or drive continuously for periods of less than one hour.

In June 2002, Ladd saw Nurse Practitioner Christopher Davis, complaining of knee and shoulder pain; Ladd did not mention his back problem to Davis. Davis noted "mild bilateral knee crepitus to full extension," and indicated that Ladd had a full range of motion in his knees and shoulders. Davis suspected arthritis and recommended that Ladd continue at his current level of activity to the extent tolerable.

Finally, Ladd saw Dr. James Long in October 2002. Long diagnosed Ladd with "chronic

low back strain," "congenital absence of right pectoral muscle," and "anxiety, with limited intellectual means, probable." Long noted that Ladd did not have a problem sitting, had normal strength except for a mild reduction in his right upper extremity, and could walk 300 feet without any assistance. Long expressed concern that Ladd had not followed up on other physicians' orthopedic and therapeutic recommendations, and he noted Ladd's failure to mention his back pain during his June appointment with Davis.

Meanwhile, Ladd filed his disability claim on July 31, 2002,[1] maintaining that he had become disabled on June 13, 2002, from arthritis, low back pain, leg pain, and missing chest and arm muscles stemming from a birth defect and that a work accident in February 2002 had exacerbated his condition. The SSA denied the claim initially and on reconsideration. Ladd then requested a hearing, which was held on November 14, 2003. Before the hearing, Ladd's medical files were forwarded to Dr. William Amos for a Physical Residual Functional Capacity Assessment. Amos found that Ladd could occasionally lift or carry twenty pounds, that he could frequently lift or carry ten pounds, that he could stand or walk for six hours in an eight-hour workday, that he could sit for about six hours in an eight-hour workday, that he had unlimited push/pull abilities, and that he was capable of light work. A vocational expert (VE) testified at the hearing. The ALJ asked the VE whether there were positions available in significant numbers in the national economy for a man of Ladd's age and condition who was limited in the ways described in Dr. Amos' assessment. The VE testified that such a person could work as a parking lot attendant, courier/messenger, or production inspector/grader. However, the VE also testified that a man with the more severe limitations described in Dr. Lee's report could not work

---

[1] Ladd had previously filed an unsuccessful claim in December 1993.

in any position available in significant numbers in the national economy.

The ALJ ultimately found, among other things, that Ladd suffers from chronic low back pain and bilateral knee pain, both "severe" impairments; that Ladd's impairments do not meet or medically equal any of the impairments specifically set out in SSA regulations; that Ladd has the residual functional capacity to occasionally lift or carry twenty pounds, to frequently carry ten pounds, and to stand or walk for six hours in an eight-hour day; that Ladd lacks the capacity to perform a full range of light work; and that Ladd, however, is capable of performing "a significant number of jobs in the national economy," including parking attendant, courier/messenger, and production inspector. The ALJ also found that Ladd's allegations regarding his limitations were not "totally credible," citing inconsistencies between medical evidence and Ladd's own descriptions of the magnitude of his symptoms, Ladd's failure to follow up with treatment recommendations, and Ladd's failure to consistently discuss both his knee and back issues when talking to physicians. Based on these findings, the ALJ denied benefits, and, after the Appeals Council denied Ladd's request for review, the Commissioner adopted the decision. Ladd appealed, and the court referred the matter to the Magistrate Judge, who found that the ALJ's decision was not supported by substantial evidence and recommended that the court reverse the ALJ's decision and remand the case only for calculation of benefits.

## II.

The record before the ALJ provided two conflicting views of Ladd's physical condition and residual capacity. On the one hand, for example, Dr. Amos viewed Ladd as capable of performing light work. Ladd's failure to follow-up on recommendations and treatment is fully consistent with and supports the view that Ladd's impairments are not as severe as he contends

4

in any position available in significant numbers in the national economy.

The ALJ ultimately found, among other things, that Ladd suffers from chronic low back pain and bilateral knee pain, both "severe" impairments; that Ladd's impairments do not meet or medically equal any of the impairments specifically set out in SSA regulations; that Ladd has the residual functional capacity to occasionally lift or carry twenty pounds, to frequently carry ten pounds, and to stand or walk for six hours in an eight-hour day; that Ladd lacks the capacity to perform a full range of light work; and that Ladd, however, is capable of performing "a significant number of jobs in the national economy," including parking attendant, courier/messenger, and production inspector. The ALJ also found that Ladd's allegations regarding his limitations were not "totally credible," citing inconsistencies between medical evidence and Ladd's own descriptions of the magnitude of his symptoms, Ladd's failure to follow up with treatment recommendations, and Ladd's failure to consistently discuss both his knee and back issues when talking to physicians. Based on these findings, the ALJ denied benefits, and, after the Appeals Council denied Ladd's request for review, the Commissioner adopted the decision. Ladd appealed, and the court referred the matter to the Magistrate Judge, who found that the ALJ's decision was not supported by substantial evidence and recommended that the court reverse the ALJ's decision and remand the case only for calculation of benefits.

## II.

The record before the ALJ provided two conflicting views of Ladd's physical condition and residual capacity. On the one hand, for example, Dr. Amos viewed Ladd as capable of performing light work. Ladd's failure to follow-up on recommendations and treatment is fully consistent with and supports the view that Ladd's impairments are not as severe as he contends

and that he is capable of performing a range of light work. On the other hand, the report of Dr. Lee suggests that Ladd's back condition has rendered him totally disabled. In the face of these conflicting, supportable views, it was the domain of the ALJ to assess credibility and to discern which view more closely mirrored reality. See Richardson v. Perales, 402 U.S. 389, 399 (1971) ("[In] the not uncommon situation of conflicting medical evidence . . . [t]he trier of fact has the duty to resolve that conflict."). He did so, and we are not permitted to impose our own view of the evidence.

### III.

The ALJ assessed credibility in a reasonable fashion and articulated his reasoning. He discounted Dr. Lee's assessment of Turner's residual capacity, finding his opinion to be "not supported by the rest of the medical records or by the treatment prescribed by Dr. Lee, which included only pain medication."[2] In light of this credibility determination, the totality of the evidence, and the testimony of the VE, the ALJ ultimately determined that there were jobs available in the national economy for someone with Turner's limitations. Substantial evidence supported this finding, and the ALJ rendered his decision in a reasonable, proper fashion; therefore, the court is constrained to affirm.

**ENTER**: This 8th day of June 2005.

UNITED STATES DISTRICT JUDGE

---

[2] While Dr. Lee's opinion would normally be entitled to greater weight under the "treating physician rule," see 20 CFR § 416.927 (d)(2), the ALJ was free to grant it less authority upon a sustainable finding that it was inconsistent with the other substantial evidence. 20 CFR § 416.927 (c)(2) See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Here, the ALJ made such a finding.